UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HDC, LLC, et al.,

       Plaintiffs,                                  Case No. 09-14027
                                                                   HON. BERNARD A. FRIEDMAN

vs.

CITY OF ANN ARBOR,

       Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSING PLAINTIFFS' STATE CLAIMS**

**I.    Introduction**

Defendant, City of Ann Arbor, has filed a Motion for Judgment on the Pleadings. Plaintiffs have filed a response brief and Defendant has filed a reply brief. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court shall decide this motion without oral argument.

**II.    Facts**

Plaintiffs are HDC, LLC, XY, LLC and 200 East William Street, LDHA, LLC. Plaintiffs' Complaint makes the following allegations.

Defendant owns the YMCA of Ann Arbor property ("YMCA" or "the Property"), which is the subject of this lawsuit. In 2004, Defendant issued a Request for Proposal #592 ("RFP") to select a developer for construction on the Property. Plaintiffs state that the construction was to be for 100 units of low income housing, and that the "dwelling units were to be available to tenants with substantially similar demographics as the existing YMCA residents, emphasizing

1

the need for supportive housing to persons of limited means with physical and mental impairments, as well as those with substance abuse problems." Cmplt. ¶ 10. The RFP's stated purpose noted that "[i]t is particularly difficult for individuals with mental and physical impairments to find secure housing, as well as those with substance abuse problems." Cmplt, Exh. 1., RFP pg. 2.

Plaintiff HDC submitted a proposal (the "Proposed Project") in response to the RFP, proposing to develop the Property and, in addition, the adjoining site owned and operated by the An Arbor Transportation Authority ("AATA"). Plaintiffs state that the "occupants of the affordable housing to be constructed pursuant to the Proposed Project were to be residents with, *inter alia*, a continuing mental or emotional impairment; and/or a documented substance abuse disorder; and/or chronic homelessness – any of which results in substantial and sustained care needs requiring supportive assistance, focusing on the areas of instrumental living skills and self-direction, in order to maintain the residents' ability to live independently." Cmplt. ¶ 13.

In March, 2005, Plaintiff HDC was chosen by Defendant to develop the Proposed Project. Following Defendant's acceptance of HDC's proposal, HDC established Defendant XY, LLC to develop the Proposed Project and 200 East William Street, LDHA, LLC to be the developer and owner of the affordable housing portion of the Proposed Project.

Plaintiffs then informed Defendant that they intended to submit an application for affordable housing tax credits to MSHDA. Plaintiffs explained to Defendant that in order to secure the tax credits, and in order to proceed with certain other necessary approvals, Plaintiffs were required to provide evidence of "control" over the Property. After selecting Plaintiffs as the potential developer and purchaser of the Property through the RFP process, the parties

2

entered into an Option Agreement for Plaintiffs to purchase the property from Defendant. The Option Agreement, first entered into on September 6, 2005 served to satisfy MSHDA's land control requirement. Cmplt. ¶ 21. The Option Agreement granted Plaintiffs the option, under certain conditions, to purchase the Property for $3.5 million.

During this time, the parties also worked on a Development Agreement to govern the site plan and construction of the Proposed Project, and a Supplemental Agreement to govern administration of the low income housing and associated supportive services.

Plaintiffs submitted their first tax credit application with MSHDA on September 15, 2005. The tax credits were not awarded to Plaintiffs. Meanwhile, Plaintiffs continued to work on other aspects of the development.

On March 13, 2006, the parties executed an Amendment to the Option Agreement (the "First Amendment"). Plaintiffs contend that the purpose of the First Amendment was to assist Plaintiffs in securing MSHDA tax credits by providing "the necessary evidence of land control documentation to MSHDA for the March 15, 2006 low income housing tax credit round. . ." Cmplt. ¶ 32. On March 15, 2006, Plaintiffs filed a second tax credit application with MSHDA. On September 14, 2006, the parties executed a Second Amendment to the Option Agreement (the "Second Amendment"), which extended the term of the original Option Agreement until February 13, 2007. Plaintiffs contend that the Second Amendment was entered into for the purpose of reflecting Plaintiffs' control over the land necessary to procure the tax credits.

On October 5, 2006, MSHDA awarded Plaintiffs the requested tax credits in excess of $18,581,310.00. Cmplt. ¶ 38.

In October 2006, Plaintiffs notified Defendant that they wanted to modify the Proposed

3

Project to include a hotel and a conference/banquet center and to eliminate the market rate housing and offices (the "Revised Project"). Plaintiffs state that they had difficulty receiving a response from the city, but in December 2006, they requested advice from the City's Mayor, who indicated that he thought the request had merit. Cmplt. ¶ 39. The City Commission ultimately approved the Revised Project in March 2007.

A Final Option Agreement was negotiated by the parties, and executed on October 12, 2007. The Final Option Agreement contained "Project Milestones" and "Project Goals" that Plaintiffs agreed to meet as a condition to Plaintiffs' purchase of the property. Cmplt. ¶ 52. By its terms, the Final Option Agreement was to expire if not exercised before March 15, 2008. Id.

One of the Milestones in the Final Option Agreement was the requirement that Plaintiffs submit a demolition and staging plan, and apply for demolition permits no later than October 15, 2007. Plaintiffs submitted the demolition and staging plan, and requested from the City the necessary forms to request demolition permits. At that point, Plaintiffs were advised that they could not apply for demolition permits because the City, and not the Plaintiffs, was the owner of the Property. Cmplt. ¶ 55. In effect, the City's Planning Department required Plaintiffs to own the Property before applying for the demolition permit, which was necessary to meet the Demolition Permit Milestone, but the City would not convey the Property to the Plaintiffs under the Final Option Agreement until the Plaintiffs met the Demolition Permit Milestone.

Plaintiffs then requested a modification of the Demolition Permit Milestone, which the City Council denied at its November 5, 2007 meeting. On November 6, 2007, Plaintiffs received correspondence from the City Attorney advising Plaintiffs that the Final Option Agreement had been terminated.

Plaintiffs contend in their Complaint that:

> The City's intentional delay, arbitrary refusals, and other machinations leading to the termination of the Final Option Agreement were motivated, *inter alia*, by (a) the City's desire to destroy the affordable housing project in downtown Ann Arbor in order to prevent recovering alcoholics/drug addicts and the mentally handicapped from residing at that location, (b) the City's desire to reallocate the Tax Credits to a different project/developer, and (c) the City's desire to sell the Property to another person or entity for an amount greater than that reflected in the Development Agreement.

Cmplt. ¶ 64.

### III. Standard of Review

Defendant's motion is filed pursuant to Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) are governed by the same standard as motions to dismiss under Fed. R. Civ. P. 12(b)(6). Jelovsek v. Bredesen, 545 F.3d 431, 434 (6th Cir. 2008). The Court must accept all factual allegations in the complaint as true, and construe the complaint in a light most favorable to Plaintiffs. Bishop v. Lucent Techs., Inc., 520 F.3d 516, 519 (6th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

Id. (citing Twombly, 550 U.S. at 556-557.

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual

5

proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (*citing* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## IV. Analysis

### A. Fair Housing Act Claims

Plaintiffs have filed a seven count Complaint. Counts I-III set forth Fair Housing Act ("FHA") claims based on the failure of the Proposed Project to reach fruition. Counts IV-VII are state law claims the parties' contracts and negotiations.

Defendant first argues that it is entitled to judgment on the pleadings on Plaintiffs' FHA claims set forth in Counts I-III of Plaintiffs' Complaint. Defendant contends that Plaintiffs have failed to plead sufficient facts in support of their claims, Plaintiffs' claims depend entirely on conclusory allegations and Plaintiffs do not state a plausible claim for relief.

Defendant asserts that Plaintiffs' FHA claims fail because the project at issue, as outlined in the RFP, specified only low-income housing, not housing for handicapped persons. In addition, Defendant states that Plaintiffs' Proposal described its "Target Population" in terms of income only, with no mention of disability, and that the MSHDA tax credits were only based on the presence of low-income housing. Defendant further argues that even if Plaintiffs can establish that the Proposed Project falls withing the scope of the FHA, Plaintiffs' FHA claims fail because Plaintiffs have failed to allege facts that state plausible claims for relief.

Plaintiffs disagree with Defendant's contentions, and point out that their Complaint contains numerous allegations that the Project was developed and intended for handicapped persons. In addition, as noted *supra*, the City's RFP stated that the Project was specified for the benefit of "individuals with mental and physical impairments. . . as well ss those with substance

6

abuse problems."

Plaintiffs' FHA claims include disparate treatment (intentional discrimination), disparate impact (discriminatory effect), failure to make a reasonable accommodation, and interference with exercise of protected rights. Plaintiffs' disparate treatment and disparate impact claims fall under 42 U.S.C. §§ 3604, 3605. The FHA makes it unlawful to "make unavailable or deny" a dwelling "because of a handicap," or to "discriminate against any person in making available such transaction, or in the terms or conditions of such a transaction, because of . . . handicap. . ." 42 U.S.C. §§ 3604, 3605.

To avoid dismissal, a complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. Twombly, 550 U.S. at 562. In order to survive a motion to dismiss, Plaintiffs must plead sufficient facts to allow the Court to draw a reasonable inference that Defendant acted with a discriminatory purpose. Lindsay v. Yates, 498 F.3d 434, 439 (6th Cir. 2007).

The Sixth Circuit has recently cited the *Iqbal* decision with favor, stating, "as the Supreme Court recently held, a complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief. *See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950-51 (2009).* [Plaintiff's] claim can survive only if he pleaded facts supporting that conclusion." Nali v. Ekman, 2009 WL 4641737 *3 (6th Cir. 2009).

1.    **Disparate Treatment**

Here, Plaintiffs have made only conclusory allegations that Defendant's refusal to make an additional extension of the Option Agreement and/or make other concessions to allow the

7

Proposed Project to come to fruition was based on a discriminatory animus. Plaintiffs' complaint contains multiple references to Defendant's "discriminatory intent," without further elaboration. The Complaint is devoid of any factual allegations to plausibly demonstrate a discriminatory state of mind, or to demonstrate that Defendant's refusal to make an additional extension of the Option Agreement and/or make other concessions demonstrates treatment of Plaintiffs that was different than that for projects for the benefit of non-FHA protected applicants.

Where there is an "obvious alternative explanation" for the challenged acts, other than the conclusory allegations stated in the Complaint, the Court must dismiss the Complaint. Iqbal, 129 S.Ct. at 1952. Here, the "obvious alternative explanation" is that Defendant made a business decision based on Plaintiffs' default with respect to the stated Milestones contained in the Final Option Agreement. Plaintiffs admit that they did not meet this Milestone, and that they admitted this default to the City Council. Further demonstrating a lack of discriminatory intent is the fact that the deadline for the Milestone at issue was negotiated and agreed to by Plaintiffs. Plaintiffs were fully aware of their obligations under the Option Agreement, and Defendant's decision to enforce the ramifications of non-compliance can plausibly be described as a business decision. The conclusory allegation that it was motivated by a discriminatory animus is not sufficient to defeat a motion to dismiss.

### 2.  Disparate Impact

Plaintiffs' disparate impact claim states that "[t]he conduct of the City also actually and predictably resulted in a disparate impact, namely the denial of housing opportunities for handicapped persons located in the region." Cmplt. ¶¶ 74, 85, 93. However, Plaintiffs do not

provide any specific factual allegations from which the Court can infer that the City's refusal to further extend the Option Agreement had any impact upon handicapped persons, let alone a *disparate* impact, that would support a FHA claim.

While the RFP's stated purpose noted that "it is particularly difficult for individuals with mental and physical impairments to find secure housing, as well as those with substance abuse problems," the only actual requirement for potential residents of the Proposed Project was low income. Cmplt, Exh. 1., RFP pp. 2, 7-8, 16. Therefore, Plaintiffs can only present speculation about the handicapped status of the hypothetical tenants, and can not make a plausible claim regarding the alleged impact of the failure of the Proposed Project on handicapped persons. In addition, while Plaintiffs may be able to argue that the hypothetical handicapped tenants would be negatively impacted by the failure of the Proposed Project to go forward, they have not plead that the hypothetical handicapped tenants would suffer an impact different from, or more burdensome than, other potential future tenants. It is not enough for Plaintiffs to simply allege that there is a disparate impact on the allegedly affected group. They must identify, with specificity, what the impact is, and how it is more burdensome than the impact on other non-protected groups. Smith v. City of Jackson, Miss., 544 U.S. 228, 241 (2005). Plaintiffs' allegations on this claim are not sufficient to defeat a motion to dismiss.

    **3.  Reasonable Accommodation Claim**

Defendant next argues that Plaintiffs' reasonable accommodation claim fails because Plaintiffs do not allege that they sought an accommodation necessitated by a disability, and they can not allege that the denial of the extension request impacted handicapped persons by reason of their handicap. Plaintiffs do not respond to this argument in their response brief. The Court

9

finds that Plaintiffs have not alleged any nexus between the requested extension and a disability, and grants Defendant's motion on this claim.

### 4. Plaintiffs' Claim of Violation of 42 U.S.C. § 3617

Plaintiffs' final FHA claim arises under 42 U.S.C. § 3617, which makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [42 U.S.C. §§ 3603, 3604, 3605 or 3606]."

The Sixth Circuit requires a showing of "discriminatory animus" to support a claim under § 3617 of the FHA. Campbell v. Robb, 162 Fed. Appx. 460, 474-474 (6th Cir. 2006)(*citing* Mich. Prot. & Advocacy Serv., 18 F.3d 337, 347 (6th Cir. 1994). Here, Plaintiffs have made no such showing. As explained above, Plaintiffs fail to plead factual allegations plausibly showing discriminatory intent, rather than only conclusory statements. The City's decision not to issue an additional extension of the Option Agreement does not in itself demonstrate discriminatory animus. Additionally, the terms of the Option Agreement itself does not demonstrate discriminatory animus. The Option Agreement was not a one-sided agreement; it was negotiated by and signed by both parties. If Plaintiffs now feel that its terms were unfair, then that is the result of flawed negotiations between sophisticated parties, and can not plausibly be imputed to a discriminatory intent.

### B. State Claims

The remaining issue before this Court concerns the disposition of the state law claims. Defendant next argues that Plaintiffs' state claims should be dismissed, or in the alternative,

Defendant is entitled to judgment on the pleadings as to those claims.

"The three prerequisites for the existence of pendent jurisdiction are (1) the federal claim must have substance sufficient to confer subject matter jurisdiction on the court; (2) the state and federal claims must derive from a common nucleus of operative fact; and (3) the plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." Transcontinental Leasing, Inc. v. Michigan Nat'l Bank, 738 F.2d 163, 165-66 (6th Cir.1984). "It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims." Gaff v. Federal Deposit Ins. Corp., 814 F.2d 311, 319 (6th Cir. 1987)(*citing* United Mine Workers v. Gibbs, 383 U.S. 715 (1966); Nash & Assocs., Inc. v. Lum's of Ohio, Inc., 484 F.2d 392, 396 (6th Cir.1973); Burt v. Blue Shield, 591 F.Supp. 755, 759 (S.D.Ohio 1984)). "In fact, the Second Circuit has gone so far as to state that 'the retention of jurisdiction for trial of a pendent state law claim on the basis of a federal question claim already disposed of by a Rule 12(b)(6) motion would be an abuse of discretion absent unusual circumstances.'" Id. (*citing* Nolan v. Meyer, 520 F.2d 1276, 1280 (2d Cir. 1975)).

Here, where the Court finds that judgment on the pleadings of the federal issues is appropriate, it declines to exercise pendent jurisdiction over Plaintiffs' state law claims. Accordingly, dismissal of Plaintiffs' state law claims is appropriate.

**V.    Order**

Accordingly,

IT IS ORDERED that Defendant's Motion for Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendant's Motion for Judgment on the Pleadings is GRANTED as to Counts I, II and III.

IT IS FURTHER ORDERED that Defendant's Motion for Judgment on the Pleadings is DENIED as to Counts IV, V, VI, and VII.

IT IS FURTHER ORDERED that Counts IV, V, VI, and VII are DISMISSED for lack of jurisdiction.


Dated: May 27, 2010                      S/Bernard A. Friedman_____
      Detroit, Michigan              BERNARD A. FRIEDMAN
                                      UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

S/Carol Mullins
Case Manager to Judge Friedman